EXHIBIT A
Case 4:17-cv-01037-VEH Document 1-1 Filed 06/20/17 Page 1 of 9
FILED
2017 Jun-20 PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>**50-CV-2017-900209.00** |
|---|---|---|

### IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA
### TERRY TUCKER ET AL V. THE PRENTICE HALL CORP SYSTEM INC/ ORKIN LLC

**NOTICE TO:** THE PRENTICE HALL CORP SYSTEM INC/ ORKIN LLC, 150 S. PERRY STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
ERIC SHANE HOLLAWAY

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 830 BLOUNT AVENUE, GUNTERSVILLE, AL 35976

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request of _____ pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

| 5/26/2017 8:37:41 AM | /s/ CHERYL PIERCE | By: _____ |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☐ Certified Mail is hereby requested.

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____
*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____ in _____ County, Alabama on _____
*(Name of Person Served)*  *(Name of County)*  *(Date)*

_____  _____  _____
*(Type of Process Server)*  *(Server's Signature)*  *(Address of Server)*

_____  _____
*(Server's Printed Name)*  *(Phone Number of Server)*

Case 4:17-cv-01037-VEH   Document 1-1   Filed 06/20/17   Page 2 of 9

ELECTRONICALLY FILED
5/26/2017 8:37 AM
50-CV-2017-900209.00
CIRCUIT COURT OF
MARSHALL COUNTY, ALABAMA
CHERYL PIERCE, CLERK

IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA

| | |
|---|---|
| TERRY TUCKER and MYRA TUCKER, | ) ) ) |
| Plaintiffs. | ) ) ) |
| vs. | ) CV-2017- |
| ORKIN, LLC, et. al. | ) ) ) ) |
| Defendant. | ) |

## COMPLAINT

Comes Now, Terry Tucker and Myra Tucker, as Plaintiffs herein and bring this action for damages against the above named Defendant, and alleges as follows:

### JURISDICTION AND VENUE

1. The Defendant herein Orkin, LLC successor to Orkin Exterminating Company, Inc. (herein called Orkin) is a foreign limited liability company, qualified to do business in the State of Alabama.

2. Orkin's registered agent for service of process is Prentice Hall Corporation. Its registered address for service of process is 40 Technology Pkwy. South, #300, Norcross, Georgia 30092.

3. Orkin may be served with a copy of this complaint by service of a copy of this complaint upon the registered agent for service of process at the registered office for said agent.

4. The Plaintiffs herein are residents of Marshall County, Alabama, residing at 425 Gin Road, Albertville, Marshall County, Alabama.

5. This claim and the causes of action set forth herein originated in Marshall County, Alabama, as the result of damages sustained to the home located at 425 gin Road, Albertville, Marshall County, Alabama. At the inception of the termite treatment as set forth hereafter, and the termite guarantee, Orkin and its predecessor maintained an office in Calhoun County, Alabama and had a manager located at said office.

6. That throughout the course of the contract that agents from Orkin also came to the Plaintiffs residence from other offices in Huntsville, Alabama.

7. This Court has jurisdiction over the subject matter, the parties hereto, and is the court of proper venue for the maintaining of this action.

## HISTORY

8. In 1993, Terry and Myra Tucker contracted with Orkin while their home was being built. Orkin treated the property located at 425 Gin Road, Albertville, Alabama, for subterranean termites. Said treatment consisted of pre-treating said property prior to the erection of a home and the subsequent alleged inspections and treatments after the completion of said construction.

9. The homeowners at the time of issuance of said guarantee was Terry Tucker and Myra Tucker.

10. Under the terms of said agreement, the property owners, Terry Tucker and Myra Tucker was obligated to pay an initial fee and thereafter to pay an annual fee or amount, which they did.

11. In consideration for the payment of said sums, Orkin guaranteed it would provide an annual inspection each year to determine whether or not there was live subterranean termite infestation and if so, repair and retreat the same at no cost to the homeowner.

12. Orkin, under the terms of said contract, obligated itself to make such repairs to the premises and contents to remedy any new damage caused by subterranean termites, after the date of the initial treatment, up to the total and aggregate amount of said guarantee.

13. Subsequent to entering into said contract, Terry and Myra Tucker paid all annual inspection fees due and was provided with an annual inspection report by Orkin.

14. The Plaintiffs have paid the amounts due under said agreement and have continued to renew the same on a yearly basis for every year since 1993.

15. Each and every year since 1993, Orkin inspected the property located at 425 Gin Road, Albertville, Alabama, and certified to the Plaintiffs that the property was free from any wood decaying organisms such as termites and charged the Plaintiffs an annual fee to keep the guarantee in place.

16. There was not any reports of termite problems from 1993 through the beginning of January 2016.

17. In January, 2016, an inspection took place and fungal growth was reported. The Orkin representative also told the Plaintiffs there was a moisture problem that needed to be addressed. An estimate was given to correct the problem. There was not any termite damage recorded on the report. (See Exhibit One)

18. The Plainitff's called Cook's Pest Control to get another estimate on correcting the alleged moisture. Cooks reported that Mr. And Mrs. Tucker had a termite problem and that there was not a moisture problem.

19. The Plaintiffs reported this to Orkin. On two different occasions, Orkin sent people to observe the damage.

20. A few days later Mike Bick, the Orkin branch manager came out and inspected the house for termites and to a section of the hardwood floor in the living room. Mr. Bick said to get an estimate to repair the damages and Orkin would pay to repair the floor.

21. On April 7, 2016, Myra Tucker filed a complaint against Orkin Pest Control with the Alabama Department of Agriculture & Industries Professional Services Unit. An inspection done by Jesse B. Hare Jr. was done and the inspection showed subterranean termite damage was observed in the crawl space, header joist, floor joist, and sub floor of the Sunken living room.

22. The Plaintiffs continued to find areas of concern that Orkin did not disclose in its inspections.

23. On or about June 2, 2016, Orkin reported to do a retreat of the home at the request of the State of Alabama Department of Agriculture and Industries Pesticide Management Division. The workers used a water hose to treat under the house. Prior to Orkin treating the house, it was dry.

24. On June 15, 2016, Collier Claims Service, Inc. contracted by Orkin came to the home and made an inspection and gave an estimate to repair the damages. complete with photographs. The estimated damage totaled $6,171.24.

25. On June 17, 2016, inspector Jesse B. Hare Jr. returned from the State of Alabama to the Tucker residence to do a re-inspection. He observed subterranean termite damage in areas of the exterior foundation, the rear of the home in the siding, and in other exterior corners of the home and areas that had not been reported or disclosed by Orkin.

26. Inspector Hares findings of previously undisclosed termite activity was immediately reported to Orkin.

27. On August 16, 2016, Orkin inspector, Russ Brooks, visited the Tucker residence to observe the retreatment of areas that were not treated during the initial inspections.

28. Subsequent to said inspection by the Plaintiff, Terry Tucker and the Independent licensed termite inspector, the Plaintiffs contacted the local state termite inspector, Mr. Hare.

29. On or about August 16, 2016, Orkin finally allegedly retreated the home but no report was forwarded to the Plaintiffs.

30. Plaintiffs show to the court the conduct of the Defendant includes a breach of contract, negligent inspection, negligent failure to treat, intentional misrepresentation, fraud and breach of contract. This subjects Orkin to Plaintiffs' claims for compensatory damages,

including property to the home, furnishings and contents, future living expenses, wilful infliction of emotional distress, bad faith penalties, attorney's fees and punitive damage, as set forth herein.

## COUNT ONE
### (Negligent Inspection)

31. The Plaintiffs reallege and aver the paragraphs 1-30 of their complaint, set forth hereinabove as if fully set herein.

32. Plaintiffs show that they entered into a contract with Orkin in 1993, while building their home. Orkin treated the property, subsequent to construction, and certified the house to be free from active infestation and from obvious termite damage.

33. Since entering into the contract with Orkin in 1993, Orkin has continuously reported on an annual basis that it had inspected the subject property and issued its annual inspection reports certifying that there was no active subterranean termite infestation, along with a premium notice.

34. The Plaintiffs' relied upon each and every annual report and paid each and every annual payment due thereon.

35. Since 1993 through the date of last inspection subsequent to August, 2016, Orkin represented to the Plaintiffs and Plaintiffs relied upon such representations, that an inspection was conducted (each year) and that no active subterranean termite infestation was located underneath said house.

36. At no time since Plaintiffs built said home, had Orkin advised them of any subterranean termite infestation until the termite damage was discovered by Cook's Pest Control as set forth above.

37. The representations by Orkin and the subsequent discovery of termite infestation and/or damage establishes that Orkin was negligent in the examination and reporting of the examination for subterranean termite infestation and in reporting that none existed.

38. The infestation was found underneath the house in January, 2016, as set forth above, establishes that said active subterranean termite infestation had been ongoing for some time.

## COUNT TWO
### (Negligent Treatment)

39. The Plaintiffs reallege and aver the paragraphs 1-39 of their complaint, set forth hereinabove as if fully set forth herein.

40. Orkin began treating the house in 1993 for subterranean termites and other wood destroying organisms and allegedly treated and inspected the same continuously until 2016.

41. The treatments of the property for subterranean termites and other wood destroying organisms, allegedly made by the Defendant, were either never performed or performed in a negligent manner which did not follow established rules set out for treatment of termite and other wood destroying organisms in the State of Alabama.

42. Because of the alleged treatments, which, if performed, were negligently performed, Plaintiffs have suffered extensive termite damage and are entitled to recover the costs and damages, together with bad faith penalty, attorney's fees and punitive damages as set forth hereafter.

## COUNT THREE
(Fraud and Negligent Misrepresentations)

43. The Plaintiffs reallege and aver the paragraphs 1-43 of their complaint, set forth hereinabove as if fully set forth herein.

44. The inspections or failure to inspect on an annual basis and the misrepresentations as to non-existence of active subterranean termite infestation and other wood destroying mechanism infestation, constitutes fraud and negligent misrepresentation because of the following:

    (a) The representations made by the Defendant were false.

    (b) They were made with knowledge of the lack of truth therein;

    (c) They were made with the intention to induce the Plaintiff's to either act by continuing to pay the annual fees or to refrain from acting by filing a complaint for the infestation.

    (d) The false representations by Orkin were justifiably relied upon by the Plaintiffs. Once the Plaintiffs had paid the annual fees and reviewed the annual reports, they were justified in relying upon the alleged truth of said report.

    (e) The Plaintiffs have been damaged as hereinafter set out.

45. That Orkin would do annual or regular inspections and would treat the home.

46. That the Defendant didn't intend to do the inspections or adequately treat the house.

47. Orkin has a history of internal policies that where their agents, representatives, and

employees are instructed or trained to blame any termite damage on excessive moisture.

48. On the January 7, 2016, an Orkin employee came out to the Tucker's residence to do an annual "inspection". He stated that there was high moisture content under the Plaintiffs house. He failed to disclose any termite damage.

49. The Plaintiffs were concerned and had another inspection done about the allegations of excessive moisture and hired another company to give another opinion

50. The reinspection by Cook's found the moisture levels within acceptable limits and visible termite damage was discovered and disclosed to the Plaintiffs.

51. The Plaintiff's reported the damage to Orkin. Orkin came out to the home and viewed the termite damage and wanted to patch or repair the particular area stating that would take care of the problem.

52. The Plaintiff's disagreed that Orkin could know that the termite damage was limited to that particular location in the house. From that point to the present the Plaintiffs have discovered or been aware that there is termite damage throughout the structure of the house.

53. The Plaintiffs believed that Orkin and its employees and agents frauduently misrepresented that there was moisture under the house and that Orkin knew that there was termite damage to the house and frauduently concealed it.

54. Orkin committed fraud and misrepresentation in alleging that it properly treated the house for termites.

55. Orkin further commited fraud and misrepresented that it would perform annually inspections to insure that no termite damage existed.

56. Orkin frauduently suppressed the existence of termite damages and falsely reported excessive moisture under the Plaintiffs house.

## COUNT FOUR
(Emotional Distress)

57. The Plaintiffs reallege and aver the paragraphs 1-57 of their complaint, set forth hereinabove as if fully set forth herein.

58. As the result of the intentional acts and/or intentional misrepresentations or fraud conducted by Orkin, the Plaintiffs home has become damaged from the infestation of the subterranean termites that could require their entire home to be dismantled and rebuilt.

## COUNT FIVE

(Breach of Contract)

59. The Plaintiffs reallege and aver the paragraphs 1-59 of their complaint, set forth hereinabove as if fully set forth herein.

60. Although Orkin had a contract which obligated it to inspect, report, repair and retreat the property located at 425 Gin Road, Albertville, Alabama, it negligently or intentionally failed to perform any or all of same in accordance with the terms of said contract.

61. Orkin's failure over the years to perform and to secrete said failure to perform from the Plaintiffs, constitutes the wilful breach of said contract and a continuing tort for each and every year that it negligently failed to inspect, did not inspect or negligently failed to report active subterranean termite infestation to the Plaintiffs as required.

## COUNT SIX
(Bad Faith)

62. The Plaintiffs reallege and aver the paragraphs 1-62 of their complaint, set forth hereinabove as if fully set forth herein.

63. The actions of Orkin as set forth herein, clearly establish that it has acted in bad faith, has been stubbornly litigious and has caused the Plaintiffs unnecessary trouble and expenses.

64. As a result, Orkin is liable to the Plaintiffs for attorney fees for its bad faith connected with the transaction and the dealing out of which these causes of actions and claims have arisen.

## COUNT SEVEN
(Punitive Damages)

65. The Plaintiffs reallege and aver the paragraphs 1-65 of their complaint, set forth hereinabove as if fully set forth herein.

66. The actions of Orkin, as set out herein, constitute clear and convincing evidence that Orkin's actions showed wilful misconduct, malice, misrepresentation, fraud, wantoness, oppression, or unconsionability.

67. As a result of the conduct as set forth above, Plaintiffs show that they are entitled to an award of punitive damages to punish, penalize or deter Orkin from such future conduct.

## COUNT EIGHT
(Damages)

68. The Plaintiffs reallege and aver the paragraphs 1-68 of their complaint, set forth hereinabove as if fully set forth herein.

69. As a result of the actions of Orkin as set forth above, Plaintiffs show the court that they have been damaged as follows:

**Property Damage:** The home located at 425 Gin Road, Albertville, Alabama, has been damaged to the extent that repairs and/or replacement may exceed the home value. Additionally, Plaintiffs show to the court that if the cost of repairs exceeds the value of said home, Plaintiffs damages should be calculated on the total cost of repairs because of the value of this home to the Plaintiffs. The Plaintiffs have lived in this home since its construction in 1993. Further even after repairs, the house will still have a depreciated value from the stigma of the damages.

**Loss of Income:** The parties home is located on their poultry farm and having to relocate during the construction, repairs, and/or replacement of their home will likely result in a loss of income due to hiring additional help or travel expenses.

**Additional Living Expenses:** It will be necessary for said property to be vacated and re-constructed. The Plaintiffs cannot reside there during repairs or reconstruction. The cost of relocating in substitute housing will be in excess of $5,000.00 per month for as long as said repairs are necessary.

**Bad Faith and Attorney's Fees:** The actions of Orkin clearly establish that it is liable to the Plaintiffs for bad faith and attorney's fees for its actions prior to the commencement of this litigation. This claim will greatly exceed this Court's jurisdictional limits.

**Punitive Damages:** Orkin has subjected itself to an award of punitive damages the amount of which shall be decided by the jury who hears this action.

WHEREFORE, based upon the foregoing, the Plaintiff's demand:

(1) That process issue and service be perfected as according to the law;

(2) The Plaintiff's have a twelve (12) person jury trial;

(3) The Plaintiff's have judgement against Defendant in an amount in excess of the Court's jurisdictional limits in an amount determined by a struck jury.

(4) That Plaintiffs have such other and further relief as to the court may seem just and proper.

**HOLLAWAY LAW OFFICE**

/s./ E. Shane Hollaway
E. Shane Hollaway
Attorney for Plaintiffs
P.O. Box 756
Guntersville, AL 35976
256-571-0151